FILED'10 AUG 19 9 :38USDC·ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RODNEY LEE HILL,

       Plaintiff,

           v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Commission,

       Defendant.

Civil No. 09-446-CL

**ORDER**

CLARKE, Magistrate Judge.

Plaintiff Rodney Lee Hill ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Commissioner's final decision denying his claim for supplemental security income ("SSI"). For the reasons set forth below, the decision of the Commissioner should be reversed and the matter remanded for further proceedings.

## I.    Background

Plaintiff filed an application for SSI on October 21, 2004, alleging disability beginning January 13, 1977. (Pl.'s Br. 2.) His application was denied initially and upon reconsideration.

Order 1

After a hearing, Administrative Law Judge ("ALJ") Catherine R. Lazuran issued her decision that Plaintiff was not disabled on November 3, 2007. (Pl.'s Br. 2.) The Appeals Council denied Plaintiff's timely request for review, and the ALJ's decision became the final order. Plaintiff seeks judicial review. (Pl.'s Br. 3.)

Prior to Plaintiff's 2004 application for SSI, an ALJ found Plaintiff was disabled based on osteomyelitis of the left leg in a decision dated March 8, 1996. He was found disabled at the third step of the sequential disability evaluation; the ALJ found that he medically equaled the listed criteria for section 1.11 and 1.08. In October 2003, Plaintiff was incarcerated and his benefits were suspended in December 2003. (Tr. 6.) Twelve months later his eligibility was terminated. Plaintiff's current application only allows benefits after October 2004.

Plaintiff alleges disability based on combined impairments, with the most critical impairments being orthopedic injuries of the knee and leg. (Pl.'s Br. 2.) In his disability report submitted with his application, he stated that problems with his left leg and a fractured neck limit his ability to work. (Tr. 95.)

At the June 7, 2007 hearing before the ALJ Plaintiff testified that he was 48 years old and had completed eight years of school but had not obtained a GED. (Tr. 263-64.) He testified that he worked in the 1980s doing auto body repair for approximately three or four years, but he had to stop after he broke his neck. (Tr. 265.) Though his earnings record stated that he received earnings in 1995 and 1996 through Bill Davis, Davis Auto Sales, he denied working there. (Tr. 266.) He explained that he has sought work but no one will hire him. (Tr. 266.) In 2002, he had an operation on his left leg, but he asserted the condition continues to worsen; his leg is draining liquid and repeatedly becomes infected. (Tr. 270, 272.) In 2003, Plaintiff was incarcerated for

Order 2

assault and his benefits were suspended. (Tr. 6.)  He was released in 2004.

Plaintiff uses a cane for balance, and he estimates that he can stand for a maximum of two hours in an eight hour day and sit for a maximum of 30 minutes.  (Tr. 273-74.)  He testified that he experienced pain during the course of the hearing.  (Tr. 291.)  He testified that he takes Vicodin and Tylenol to control pain, and without it, his pain would be a level 10 on a scale of 1 to 10 with 10 being the worst pain.  He explained that the medication will bring the pain down to a level 8.  (Pl.'s Br. 4.)  Plaintiff also testified that he has someone help him get up and get dressed two to three times a week, that he does no household chores, and he does not cook or shop.  He does not participate in any social clubs or attend church, and he has no hobbies.  (Tr. 24.)

## II.    Standards

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the record as a whole and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d

Order 3

855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings

on the record and supported by substantial evidence. Ceguerra v. Sec'y of Health & Human

Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if

supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even

where findings are supported by substantial evidence, "the decision should be set aside if the

proper legal standards were not applied in weighing the evidence and making the decision."

Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577,

579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter,

upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the

decision of the Commissioner, with or without remanding the case for a rehearing.

## III.    Commissioner's Decision

The initial burden of proof rests upon the claimant to establish disability. Howard v.

Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate

an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §

423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled.

Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial

gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the

present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the

Order 4

date of his application October 21, 2004.  (Tr. 22.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  If the Commissioner finds in the negative, the claimant is deemed not disabled.  If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three.  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  In the instant case, the ALJ found that Plaintiff has severe impairments of degenerative joint disease of the left knee with a history of fracture and osteomyelitis and cervical degenerative disc disease with a history of fusion.  (Tr. 22.)  Accordingly, the inquiry moved to step three.

Step three focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four.  Yuckert, 482 U.S. at 141.  In this case, the ALJ found that Plaintiff's impairments, either singly or in combination, were not severe enough to meet, or medically equal to, any of the listed impairments.  The ALJ specifically considered section 1.02 concerning major peripheral joints and section 1.04 concerning disorders of the spine.  (Tr. 22.)

In step four, the Commissioner determines whether the claimant has the residual functional capacity (RFC) to perform his "past relevant work."  20 C.F.R. § 404.1560(a).  The RFC is based on all relevant evidence in the case record, including the treating physicians' medical opinions about what an individual can still do despite impairments. SSR 96-8p at *5. "Past relevant work" refers to work that "was done within the last 15 years, lasted long enough

Order 5

for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. §

404.1565(a).  It does not consider "off-and-on" work during that period.  Id.   If he can perform

past relevant work, then the Commissioner finds the claimant "not disabled."  If the claimant

cannot perform past relevant work, the inquiry advances to step five.  20 C.F.R. §§ 404.1520(e),

416.920(e).

> The ALJ found that the Plaintiff has the residual functional capacity
>
> to lift and carry twenty pounds occasionally and ten pounds frequently.  During an
> eight-hour day, he can stand and walk for about 6 hours and sit without limit.
> Furthermore, he should avoid working overhead or in positions requiring
> extension of his neck, and is limited to occasionally bending, stooping or
> crouching.  The claimant must use an assistive device to walk long distances or to
> walk over uneven terrain.

(Tr. 23.)  The ALJ found that the Plaintiff cannot perform past relevant work.  (Tr. 27.)   The

ALJ also found that Plaintiff's statements concerning his symptoms and their effects are

disproportionate and not supported by objective medical evidence or other corroborating

evidence.  The ALJ determined that his subjective complaints were not sufficiently credible to

serve as strong evidence of a disability.  (Def.'s Br. 5.)

In step five, the burden is on the Commissioner to establish that the claimant is capable of

performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20

C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this burden, then the

claimant is deemed disabled.  Here, the ALJ determined that there are jobs that exist in

significant numbers in  the national economy that the Plaintiff can perform.  (Tr. 28.)  The VE

testified that given Plaintiff's age, education, work experience, and residual functional capacity,

an individual in Plaintiff's position would be able to perform the requirements of representative

Order 6

light, unskilled occupations such as packing/filling machine operator or plastic injection molding machine operator.  (Tr. 28.)  The ALJ concluded that Plaintiff has not been under a disability since the date of application, October 21, 2004.  (Tr. 28.)

## IV.    Discussion

Plaintiff asserts that the ALJ's decision should be reversed as it is not supported by substantial evidence.  Plaintiff argues that the ALJ erred by failing to:

(1)    develop the record,

(2)    make proper findings at Step 2 and Step 3,

(3)    consider properly the medical evidence and the lay evidence, and

(4)    include all limitations in Plaintiff's RFC and the vocational hypothetical.

(Pl.'s Br. 7.)

### A.    Record Is Not Incomplete

Plaintiff argues the case should be reversed because the record is incomplete.  He contends that his counsel did not receive the entire record that includes Plaintiff's past finding of disability from 1996.  (Pl.'s Br. 7.)  Of concern to Plaintiff is a June 2003 Continuing Disability Review ("CDR") letter issued a few months prior to his incarceration.  (Pl.'s Br. 8.)  He also argues that at least 20 pages of Dr. Baum's notes are missing rendering the record incomplete.

Social Security regulations provide that an individual may not receive benefits if he is incarcerated but benefits may resume under some circumstances:

> a recipient is ineligible for benefits for the first full calendar month in which he or she is a resident of a public institution . . . . Such ineligibility continues for so long as such individual remains a resident of a public institution. . . . If benefits are otherwise payable, they will be resumed effective with the earliest day of the month in which a recipient is no longer a resident of a public institution.

Order 7

20 C.F.R. § 416.1325.

After twelve months of consecutive suspension, eligibility to receive benefits may be terminated. 20 C.F.R. § 416.1335. "While the regulations provide for the resumption of suspended benefits upon an otherwise eligible recipient's release from custody . . . they provide for no such reinstatement where a recipient's eligibility has been terminated after 12 consecutive months of suspension." Stubb-Danielson v. Astrue, 539 F.3d 1169, 1172 (9th Cir. 2008).

As Defendant points out, Plaintiff's benefits were suspended and then his eligibility was terminated because he was incarcerated for twelve consecutive months. To resume benefits, Plaintiff must reapply and submit a new application. The court agrees with Defendant's explanation of Plaintiff's application status: "The issue is whether substantial evidence, including medical records from September 2000 through May 2007, supports the ALJ's decision that Plaintiff was not disabled since October 2004." (Def.'s Br. 5.) Plaintiff's 1996 disability decision is not necessary for a complete record. Accordingly, the CDR letter is relevant to his prior disability eligibility and not his present application. This letter's absence in the previous proceedings does not make the record incmoplete.

As to Plaintiff's contention that 20 pages of Dr. Baum's notes are missing from the record, the court concludes these pages are not missing and the record table of contents was merely misread. A careful review of the table of contents and the various numbering of pages over the course of the application reveals the record is complete as to Dr. Baum's notes as it is.

On the Table of Contents (Tr. 3), the notation for Dr. Baum's notes is "D-12F" and these notes begin on page 247. The page number "67" appears to indicate Dr. Baum's notes' page

number from a previous compilation of the record. It does not indicate that Dr. Baum's notes run

from page 247 to 267, as Plaintiff reads it. Although the page number column is labeled "no. of

pages" the numbers appear to correspond to only the beginning page number and not simply the

quantity. (Tr. 3.) As with many records for social security complaints, this one is not a model of

clarity as the same record is used and recompiled several times before making it to this court.

However, the record is not incomplete.

### B.    The ALJ Made an Improper Finding at Step 2

Plaintiff argues that the ALJ failed to include the severe impairment of his comminuted

tibula-fibula fracture and headaches at step 2. (Pl.'s Br. 9.) As a result, he argues, the remaining

sequential analysis was negatively affected because the ALJ then did not consider the

impairments in relation to the Listings or combination.

The burden on the Plaintiff at step 2 is "not an exacting one." McCrea v. Commissioner

of Social Security, 370 F.3d 357, 360 (3rd Cir. 2004). "[T]he Commissioner has clarified that an

applicant need only demonstrate something beyond a slight abnormality or a combination of

slight abnormalities which would have no more than a minimal effect on the individual's ability

to work." Id., citing SSR 85-28 *4. The inquiry at this step is a *de minimus* screening device to

dispose of groundless claims. Id. (internal citations and quotation omitted).

Defendant argues that there is no error at step 2. "Because the ALJ resolved the second

step of disability determination evaluation in Plaintiff's favor, Plaintiff cannot be prejudiced by

the ALJ's failure to characterize an impairment as 'severe,' or as belonging to a combination of

'severe' impairments." (Def.'s Br. 2, citing Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).)

Defendant suggests that because Plaintiff's application was permitted to proceed to step 3, there

can be no error in failing to characterize his knee injuries as a severe impairment or his
headaches as impairments.

The court disagrees. The <u>Burch</u> case is distinguishable from the issues before this court.
In <u>Burch</u>, the Ninth Circuit evaluated whether the ALJ erred by failing to properly consider
claimant's obesity throughout the sequential disability analysis. <u>Id.</u> at 681. This was an
individualized assessment, and the ALJ simply did not find that obesity was a severe impairment.
<u>Id.</u> at 682. The court found that there was no evidence in the record that the claimant's obesity
exacerbated her other impairments. Further, the Court found that the claimant did not specify
which listing she believed she met and did not provide any evidence that would support a
diagnosis. <u>Id.</u> at 683.

Here, the issue is different. Plaintiff contends that he has at least three severe
impairments: degenerative joint disease of the left knee, comminuted tibia-fibula fracture and
osteomyelitis, and cervical degenerative disc disease with a history of fusion. (Pl.'s Br. 9.) He
argues that the ALJ's finding "confused and combined" the separate impairments of his knee and
his lower leg when she only found severe impairments of "degenerative joint disease of the left
knee with a history of fracture and osteomyelitis; and cervical degenerative disc disease with a
history of fusion." (Tr. 22.)

Unlike in <u>Burch</u> in which the ALJ declined to find an impairment of obesity, the ALJ here
apparently confused the impairments and combined them into one, though each should be
considered separately. The record presented sufficient evidence of the comminuted tibula
fracture to meet the *de minimus* standard at step 2. The record shows the impairment has an
effect on Plaintiff's ability to work. Dr. Davidoff diagnosed Plaintiff with "chronic leg pain

Order 10

status post remote left leg fracture, consistent with traumatic osteoarthritis, as well as history of chronic infection.  History is concerning for chronic osteomyelitis." (Tr. 211.)

Plaintiff also argues that step 2 is in error because the ALJ did not consider his impairment of headaches.  This impairment was not included at step 2 of the ALJ's decision.  In response, the Appeals Council argued,

> Dr. Davidoff concluded the headaches are secondary to your cervical spine problem. The [ALJ] considered your headache complaint and did incorporate restrictions in your residual functional capacity:  you must avoid overhead reaching or in positions requiring extension of his neck [sic].

(Tr. 8.)  Defendant further asserts that Plaintiff has shown no error in the omission of headaches in the RFC because "he identifies no limitation allegedly attributable to these impairments beyond what the ALJ included in the RFC." (Def.'s Br. 14.)

The court disagrees with Defendant's and the Appeals Council's argument. While Dr. Davidoff did note that the headaches were "secondary" this does not preclude the condition from limiting his ability to work.  The evidence in the record is sufficient to meet the *de minimus* standard of Step 2.

Recognizing these severe and non-severe impairments at step 2 will address Plaintiff's concerns regarding Step 3.  Plaintiff argues that the confusion of the leg fracture and the knee injuries led to the ALJ's failure to consider Plaintiff's injuries with the Listings that apply to the fracture of the femur.  (Pl.'s Br. 10.)  Plaintiff argues that he meets Listing 1.06 and is per se disabled (Pl.'s Br. 10), but Defendant disagrees. (Def.'s Br. 15.)

The ALJ's failure to include these impairments at Step 2 did prejudice the Plaintiff.  On remand, the ALJ should complete the sequential evaluation with these impairments included at

Order 11

step 2.

### D.    The ALJ Properly Considered Evidence

Plaintiff argues the decision should be reversed because the ALJ failed to properly consider physician evidence, other medical evidence, and lay witness evidence.

### i.    Physician Evidence

Plaintiff contends that the ALJ failed to properly consider evidence from treating physician Dr. Baum and examining physician Dr. Thomas. (Pl.'s Br. 12-13.)

Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Secretary of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or

Order 12

examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by first setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and lastly making findings. Cotton, 799 F.2d at 1408; Rodriguez, 876 F.2d at 762.

"The ALJ is responsible for resolving conflicts in medical testimony and resolving ambiguity." Morgan v. Comm'r of Social Security Admin., 169 F.3d 595, 603 (9th Cir. 1999) (citing Andrews v.Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Magallanes v. Bowen, 881 (F.2d 747, 751, 755 (9th Cir. 1989). It is incumbent upon the ALJ to determine when there are inconsistencies in the record and when they are material as well as whether certain factors are relevant to discount the opinions of medical professionals. Id.

### a.    Dr. Baum

Plaintiff argues that the ALJ inadequately considered the opinions of Dr. Baum, "as evidenced by her failure to discuss or even reference most of Dr. Baum's chart notes, including his diagnoses." (Pl.'s Br. 12.) Specifically, he argues, the ALJ failed to analyze or discuss how the angular deformity was "evidence of the malunion of the bone." (Pl.'s Br. 12.)

Defendant on the other hand argues the ALJ's treatment was proper. Defendant contends that in medical terminology, a description of solid healing and angular deformity is not inconsistent with a diagnosis of malunion, which is defined as "union of the ends of a broken bone resulting in a deformity or crooked limb." Medilexicon www.medilexicon.com/medicaldictionary.php. Hence, Defendant argues, the ALJ's description is not material. (Tr. 11.)

The court agrees. That ALJ's characterization of Dr. Baum's evidence was not a rejection

Order 13

of his opinion.

### b.    Dr. Thomas

Plaintiff argues that the ALJ improperly disregarded Dr. Thomas's opinion.  (Pl.'s Br. 15.)

Defendant, however, argues that the ALJ properly gave legitimate and specific reasons for

rejecting the opinion.  (Def.'s Br. 12.)

The ALJ described her use of Dr. Thomas' medical evidence:

> Dr. Thomas seems to have relied heavily on the subjective reports of symptoms
> and limitations provided by the claimant, and seems to uncritically accept as true
> most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this
> decision, there exist good reasons for questioning the reliability of the claimant's
> subjective complaints. . . . Consequently, the undersigned does not afford Dr.
> Thomas' opinions any significant weight. . . . Dr. Davidoff was more objective
> and his opinion is entitled to more weight.  Another reason to give more weight to
> Dr. Davidoff and Dr. Reitze is that, in conjunction with doing their evaluations,
> they saw medical records regarding the claimant's condition but Dr. Thomas did
> not.

(Tr. 27.)  Both Drs. Davidoff and Reitze concluded that Plaintiff could stand and walk for six

hours in an eight hour day.  (Tr. 26.)  Dr. Thomas concluded that Plaintiff could stand for only

fifteen minutes at a time and could only walk a very short distance.  (Tr. 26.)

As Dr. Thomas' opinion was contradicted by Dr. Davidoff and Dr. Reitze, the ALJ must

give specific and legitimate reasons for giving his opinion less weight.  She did this by

explaining how Dr. Thomas' opinion was influenced by Plaintiff's subjective complaints,[1] that

Dr. Davidoff was more objective with evidence that was consistent with the record, and Drs.

---

[1] The ALJ's "good reasons" refer to her credibility determinations of Plaintiff. Specifically, she found that
Plaintiff's allegations as to the intensity, persistence, and limiting effects of his symptoms were disproportionate and
not supported, that treatment for his condition has been routine, minimal and conservative suggesting less severe
condition than alleged, that he has a sporadic work history that raises questions about the reasons for being
unemployed in addition to his medical impairment, and that his daily activities are inconsistent with his alleged
impairments. (Tr. 24-25.)

Order 14

Davidoff and Reitze reviewed the medical records in conjunction with their evaluations.

The ALJ did not err in her treatment of Dr. Thomas' opinion.

### ii.    Other Source Medical Evidence

Plaintiff argues that the ALJ was in error because she did not mention or otherwise consider the evidence from Family Nurse Practitioner (FNP) Terry Bunker.  (Pl.'s Br. 16.)

Evidence from "other sources" may be used to show the severity of the individual's impairments and how it affects his ability to function.  SSR 06-03p at *2.  These sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists.  Id.; 20 C.F.R. § 404.1513(d)(1).  "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. . . . However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03p at *2.

Social Security Regulations provide guidance in considering how much weight to give opinions from "other sources."  Such evaluation is case specific.  Factors the ALJ may consider include, "how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion."  Id. at *4-5.

At a minimum, an ALJ should treat these medical professionals' opinions with as much consideration as a lay witness and give reasons supported by substantial evidence for rejecting it.

Order 15

<u>Vincent on behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir 1984).

Plaintiff argues that the ALJ failed to consider the FNP's evidence that included a referral to an orthopedist for a chronic pain management plan.  He contends that this evidence was improperly disregarded and its omission from the RFC further impacted the hypothetical to the VE.  (Pl.'s Br. 16.)

Defendant argues the FNP's opinion was not improperly disregarded because it did not provide information that the ALJ can properly consider as other medical evidence.  "Ms. Bunker documented Plaintiff's subjective complaints and assessed history of left tibia fracture, back and leg pain, degenerative joint disease, and unrelated intermittent conditions. . . . her notes are consistent with medical evidence and the residual functional capacity assessment."  (Def's Br. 13, citing tr. 228-33, 238-39.)  Defendant points out the evidence "did not indicate the severity and limiting effects of Plaintiff's symptoms, and are consistent with other evidence and the ALJ's findings."  (Def.'s Br. 13.)

The court agrees.  The ALJ did not err in declining to discuss the FNP's evidence.

### iii.    Lay Witness Evidence

Plaintiff argues the ALJ erred by failing to mention or otherwise consider the lay evidence presented by former girlfriend Diane Beck in the "Third Party Information on Activities of Daily Living and Socialization" form.  (Pl.'s Br. 17.)

The Commissioner will consider non-medical sources to evaluate the severity of the impairment, such as testimony from spouses and other family members.  20 C.F.R. § 404.1513(d)(4).  In <u>Sprague v. Bowen</u>, the court found that testimony of claimant's daughter and friend was fully competent to substantiate the doctor's diagnosis.  The court concluded,

Order 16

"[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. . . . Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." 812 F.2d 1226, 1232 (9th Cir. 1987) (citing 20 C.F.R. § 404.1513(e)(2)).

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996)).  In considering lay witness opinions, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."  SSR 06-03p at *6.  However, the ALJ need not discuss evidence that is neither significant nor probative.  Vincent v. Heckler, 739 F.3d 1393, 1395 (9th Cir. 1985).

In Greger v. Barnhart, the court affirmed the ALJ's decision to reject lay witness testimony.  The ALJ concluded that the witness statements were inconsistent with claimant's presentations to his doctors and noted the witness's "close relationship," which may have influenced her desire to help the claimant. The court concluded, "[t]he ALJ's reasons for doubting [the witness's] credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony."  464 F.3d 968, 972 (9th Cir. 2006).

However, the court in Dodrill v. Shalala clarified that lay witness testimony has its place in the ALJ's decision when the witness can provide independent observations:

[t]hat the ALJ dismissed all the lay witness testimony solely because he found that

Order 17

the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms. . . . An eyewitness can often tell whether someone is suffering or merely malingering.  While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight.  If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.

12 F.3d 915, 919 (9th Cir. 1993).

Defendant argues that because Ms. Beck's statement predated the Plaintiff's application and onset of disability date of October 2004 the ALJ was not required to discuss it.  "Ms Beck's statements concerning Plaintiff's functioning in May 2003 are neither significant nor probative of Plaintiff's October 2004 claim of disability."  (Def.'s Br. 14.)

The court agrees.  The ALJ did not err in failing to discuss this statement.

**D.    ALJ Provided an Inaccurate RFC and Hypothetical**

Plaintiff argues that because of the improper step 2 that did not include two impairments, the RFC and following hypothetical are inaccurate. The court agrees.  To the extent that the ALJ failed to consider the severe impairment of his leg fracture and headaches, the RFC and hypothetical cannot be substantial evidence.

Plaintiff also contends that the RFC is inaccurate because the ALJ did not account for limitations and restrictions related to Plaintiff's pain, as FNP Bunker's opinion evidence provided.  (Pl.'s Br. 16.)  As discussed above, the ALJ properly considered the FNP's evidence and thus her failure to include pain in the RFC was not in error.

**V.    Conclusion**

This decision should be reversed and remanded.  The ALJ's decision is not based on

substantial evidence.  On remand, the ALJ should include at step 2 impairments of the leg

fracture and headaches and proceed with the evaluation.


DATED this _19_ day of August, 2010.


MARK D. CLARKE
United States Magistrate Judge


Order 19