FILED'11 FEB 22 14:12USDC-ORM

IN THE UNITED STATES DISTRICT COURT

·FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

RODNEY LEE HILL,

              Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration.

              Defendant.

Case Number 09-446-CL

**ORDER**

CLARKE, Magistrate Judge

    This matter comes before the Court on plaintiff's motion (#27) seeking prevailing party fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

## BACKGROUND

    Rodney Lee Hill ("Plaintiff") was found disabled by ALJ decision dated March 8, 1996, due to osteomyelitis of the left leg, a condition found to persist at a continuing disability review on June 18, 2003.  On September 29, 2003, plaintiff was convicted on criminal charges and sentenced to serve a term of incarceration, rendering him ineligible to receive disability benefits as of October 2003.  20 C.F.R. § 416.1325.  Plaintiff's benefits were terminated in October 2004 as a result of having been suspended for twelve consecutive months.  20 C.F.R. § 416.335.

Page 1 - ORDER

Plaintiff was released from prison in October of 2004, and filed an application for Social Security

Supplemental Security Income (SSI) benefits in October 21, 2004. Plaintiff alleged disability

due to "left leg problem fractured neck." (Tr. 95).[1] Plaintiff's application for benefits was denied

initially on February 5, 2003, and again upon reconsideration March 18, 2005. A hearing was

held before Administrative Law Judge ("ALJ") Catherine R. Lazuran on June 7, 2007.

On November 3, 2007, the ALJ issued her disability determination finding that plaintiff

was not disabled. (Tr. 20-29). She concluded, in relevant part, that plaintiff suffered from two

severe impairments: (1) degenerative joint disease of the left knee with a history of fracture and

osteomyelitis, and (2) cervical degenerative disc disease with a history of fusion. However, she

concluded that plaintiff did not have an impairment or combination of impairments that met or

medically equaled any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ

determined that plaintiff had the residual functional capacity ("RFC") to lift and carry twenty

pounds occasionally and ten pounds frequently; could sit without limit, stand and walk for six

hours out of an eight hour work day, but would need an assistive device to walk long distances or

over uneven terrain; should not work in positions requiring extension of his neck and should

avoid working overhead; and was limited to only occasional bending, stooping, or crouching.

(Tr. 23). In reaching this determination, the ALJ noted that plaintiff had "medical conditions that

could reasonably result in problems with his knee, leg and neck if he attempted to exceed" these

limitations, but found that his allegations regarding the intensity, persistence and limiting effects

of his symptoms were "disproportionate to and not supported by the objective medical findings

or by any other corroborating evidence." (Tr. 24).

---

[1] "Tr." signals reference to the transcript of the SSA's Administrative Record.

Page 2 - ORDER

## LEGAL STANDARDS

A prevailing party in an action against the United States is entitled to an award of attorney fees and costs under the EAJA unless the government's demonstrates that its position in the litigation was "substantially justified" or that "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). An applicant for disability benefits prevails against the United States if the denial of benefits is reversed and remanded for rehearing pursuant sentence four of 42 U.S.C. § 405(g), regardless of whether benefits are ultimately awarded. Shalala v. Schaefer, 509 U.S. 292, 300-01, 113 S.Ct. 2625 (1993). The burden of establishing substantial justification is on the government. Gutierrez v. Barnhart, 274 F.3d 1255, 1258 (9th Cir. 2001). The government's position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." Pierce v. Underwood, 487 U.S. 552, 565-66, 108 S.Ct. 2541 (1988); U.S. v. Marolf, 277 F.3d 1156, 1160 (9th Cir. 2002).

## DISCUSSION

The parties do not dispute that plaintiff was the prevailing party. The issue in this case is therefore whether the Commissioner's decision to defend the ALJ's determination against plaintiff's appeal was "substantially justified."

That a plaintiff prevails in an appeal of a denial of benefits raises no presumption that the government's position was not substantially justified. Kali v. Bowen, 854 F.2d 329, 334 (9th Cir. 1988). When assessing EAJA fee applications for cases that have been remanded because of an administrative law judge's procedural error, "the relevant question is whether the government's decision to defend on appeal the procedural errors committed by the ALJ was substantially justified." Schafer v. Astrue, 518 F.3d 1067, 1071 (9th Cir. 2008) (*citing* Corbin v. Apfel, 149

Page 3 - ORDER

F.3d 1051, 1052-53 (9th Cir. 1998)).

Here, plaintiff complained of four alleged errors committed by the ALJ: (1) a failure to fully develop the record; (2) failure to include his knee injury and headaches as "severe" impairments at Step 2 of the sequential analysis and to consider them at Step 3 in determining whether he satisfied any of the Listings; (3) failure to properly consider the medical record and lay evidence; and (4) failure to include his knee injury and headaches in formulating his RFC and in the hypothetical posed to the vocational expert at the hearing. (Pl. Br., Dckt. # 15, at 7). This court found that the ALJ properly developed and considered all evidence in the record, yet remanded the matter as the result of the ALJ's failure to: (1) distinguish plaintiff's comminuted tibia-fibula fracture from his knee injuries and consider each as a separate severe impairment; (2) consider plaintiff's allegations of impairment due to headaches; and (3) include these limitations in her assessment of plaintiff's RFC and in the hypothetical posed to the vocational expert. (Order, Dckt. # 25, at 9-11, 18).

In opposing plaintiff's appeal, defendant argued, in relevant part, that the ALJ committed no reversible error by failing to characterize plaintiff's knee injury and headaches as severe impairments at Step 2, because the ALJ was required to consider at Step 3 the effects of all plaintiff's impairments, severe and non-severe. Therefore, the RFC assessment and hypothetical posed to the vocational expert reflected all of plaintiff's limitations. Defendant also argued that the ALJ committed no error by not finding plaintiff's alleged headaches to be a severe impairment, because plaintiff did not identify any limitation attributable to this alleged impairment. Therefore, the ALJ could properly omit any limitation due to headaches from the RFC assessment and the hypothetical to the vocational expert.

Page 4 - ORDER

Although this court decided that the ALJ's opinion conflated several of plaintiff's physical impairments which should be distinguished and separately considered as a source of impairment, the inquiry here is not whether the ALJ's position was correct, but whether the Commissioner had a reasonable basis in law and in fact for opposing plaintiff's appeal. On review of the pleadings and the full record, the court finds that the ALJ committed no fundamental procedural errors and the Commissioner reasonably advanced well founded arguments defending the determination, therefore the Commissioner's decision to defend plaintiff's appeal was substantially justified.

## I.    PLAINTIFF'S LEFT LEG INJURIES

In his appeal of the ALJ's decision, plaintiff argued for the first time that he suffered from two distinct impairments of his left leg: a comminuted tibia-fibula fracture and injuries to his knee. These physical impairments had not previously been clearly identified as distinct in plaintiff's pleadings, the medical record, or in plaintiff's testimony at the hearing before the ALJ. In his appeal of the ALJ's opinion, plaintiff argued that the ALJ "apparently confused and combined" these impairments, and that her finding that he suffered from a severe impairment consisting of "degenerative joint disease of the left knee with history of fracture and osteomyelitis" was insufficient to address his impairments. On review of the pleadings and the entire record, it is evident that while the ALJ's finding conflated these two medical conditions, her finding is generally consistent with and encompasses the diagnoses of plaintiff's treating and examining physicians and the record as a whole.

### The Medical Record

Based on his September 6, 2000, examination of plaintiff, Dr. Geoffrey E. Baum, D.O., orthopedic surgeon, diagnosed plaintiff as "likely" having a "torn meniscus with valgus deformity

Page 5 - ORDER

secondary to fracture." (Tr. 236). He noted left knee pain of a progressive nature and treatment

for left tibial fracture and cervical fusion. (Id.). On review of a bilateral standing knee x-ray, Dr.

Baum diagnosed plaintiff with a lateral compartment degeneration of the left knee and malunion

of the mid shaft tibia fibula. (Tr. 237). In a November 8, 2006, follow up appointment, Teri

Bunker, Family Nurse Practitioner ("FNP"), diagnosed plaintiff as suffering from degenerative

joint disease. (Tr. 238).

Based on her June 11, 2003, examination of plaintiff, Dr. Julie Rietze, M.D., diagnosed

plaintiff with (1) history of left lower extremity injury and pain, and (2) history of cervical injury

with physical evidence of prior injury and disc disease with left upper extremity radiculopathy.

(Tr. 243). She opined that plaintiff could sit six hours in an eight hour workday, that he would

need an assistive device for long distances and uneven terrain, but not short distances; that he

could lift and carry 10 pounds frequently and 20 pounds occasionally, secondary to lower left

extremity pain and neck pain; and recommended only occasional bending, stooping and

crouching due to lower extremity pain. (Tr. 244).

Based on her January 17, 2005, examination of plaintiff, Dr. Leslie Davidoff, M.D.,

recorded plaintiff as reporting from left leg fracture dating to 1978-1979, neck fracture dating to

1979, headaches which plaintiff reported "are secondary to the neck pain" and being of a

"pressure and throbbing/pounding quality," and left shoulder pain due to a recent lifting injury.

(Tr. 208-209). Dr. Davidoff diagnosed plaintiff with chronic leg pain "status post remote left leg

fracture, consistent with traumatic osteoarthritis, as well as history of chronic infection"; chronic

neck pain "status post remote neck fracture and fusion, consistent with traumatic osteoarthritis

and degenerative disc disease"; chronic headaches due to muscle tension secondary to his neck

pain; and left subacromial bursitis. (Tr. 211). She opined that "[w]ith proper analgesia" plaintiff
could stand and walk six hours in an eight hour day, secondary to his chronic leg pain and
recurring episodes of infection; sit without restriction; that although plaintiff's musculature was
very well developed, indicating his ability to lift substantial weight, due to his neck pain plaintiff
should be limited to lifting and carrying 20 to 50 pounds occasionally and 10 to 25 pounds
frequently; and recommended no postural limitations except avoiding positions requiring neck
extension. (Id.).

Based on his June 2, 2005, examination of plaintiff, Dr. Stephen J. Thomas, M.D., P.C.,
orthopedic physician and surgeon, diagnosed plaintiff as suffering from (1) "malunion tibia left
with osteoarthritis of the left knee," and (2) "post cervical fusion." (Tr. 224). Dr. Thomas
recommended a bone scan to search for evidence of osteomyelitis of the left leg, evaluation by an
orthopedic surgeon for corrective osteotomy, possible surgical intervention for plaintiff's knee.
(Id.). He further opined that plaintiff was capable of only limited standing, walking, and stair
climbing, and that he should avoid uneven ground and overhead work. (Id.). Dr. Thomas noted
that as a result of a motor vehicle accident 20 year prior, plaintiff had been left with a painful,
stiff neck, but "denie[d] any radiculopathy." (Tr. 222).

**Discussion**

The medical record as a whole does not clearly show separate and distinct diagnoses
related to plaintiff's leg fracture and his knee injury. Rather, the record reflects that plaintiff was
treated holistically for a series of problems with his left leg, diagnosed variously as malunion of
the tibia fibula, degenerative joint disease, lower left extremity injury and pain, chronic leg pain
"status post remote left leg fracture, consistent with traumatic osteoarthritis, as well as history of

Page 7 - ORDER

chronic infection," and "malunion tibia left with osteoarthritis of the left knee chronic leg pain due to fracture." The ALJ's finding reflects this series of apparently interrelated conditions and obviously seeks to encompass them all, by describing plaintiff's severe impairment as "degenerative joint disease of the left knee with history of fracture and osteomyelitis." While this may not correctly represent the terminology which medical personnel would use to describe plaintiff's conditions, it is a diligent attempt by a non-physician to describe the physical conditions which impair plaintiff's functional abilities. This court specifically found that the ALJ properly considered the record and gave clear and convincing reasons for affording greater or lesser weight to the opinions of plaintiff's physicians. Moreover, the ALJ incorporated all the functional and postural restrictions recommended by plaintiff's physicians attributable to the impairment caused by the various medical conditions of his left leg. Thus, the ALJ committed no "basic and fundamental error" in reaching her determination regarding plaintiff's disability.

As a result, the Commissioner could and did raise well founded arguments that the ALJ's disability determination accounted for all of plaintiff's medically diagnosable impairments attributable to his left leg. Although this court ultimately determined that the regulations tilted in favor of remand for clarification of the ALJ's decision, this decision was reached only after careful consideration of the arguments and the record, not as a matter of course as the result of fundamental error. *C.f.* Shafer, 518 F.3d at 1072 (government not substantially justified in defending ALJ's opinion based on fundamental errors including failing to make findings regarding physician's diagnosis or provide clear and convincing reasons for discrediting the plaintiff's subjective complaints and rejecting physician's opinion); Corbin, 149 F.3d at 1053 (government's defense lacked substantial justification where the ALJ committed basic and

fundamental errors by failing to make findings and weigh the evidence).

### Conclusion

It could reasonably be argued that the ALJ's decision remained supported in law and in fact, despite this error. Therefore, the Commissioner was substantially justified in the decision to defend against plaintiff's appeal the ALJ's failure to (1) distinguish plaintiff's comminuted tibia-fibula fracture from his knee injuries and consider each as a separate severe impairment, and (2) include limitations attributable to plaintiff's knee injuries, as distinct from his leg fracture, in her assessment of plaintiff's RFC and the hypothetical posed to the vocational expert.

## II.    PLAINTIFF'S HEADACHES

In his appeal of the ALJ's decision, plaintiff argued that the ALJ erred by failing to find his headaches to be a severe impairment at step two of the analysis and failing to account for his functional limitations due to headaches in assessing his RFC. As a result, plaintiff argues the hypothetical posed to the vocational expert fails to account for all of his limitations and is therefore invalid.

### The Medical Record

Plaintiff did not allege disability due to headaches on his benefits application, although a "Symptoms and Non-exertional Limitations Checklist" completed January 26, 2005, notes plaintiff reported "neck causes headaches." (Tr. 140). Following the denial of his disability benefits, plaintiff included headaches among his disabling conditions on his March 3, 2005, Disability Report Appeal. (Tr. 130-137). However, there is only a single medical record in the entire transcript showing plaintiff complained of headaches to a physician. Dr. Davidoff's report notes that during her January 17, 2005, examination, plaintiff reported suffering from headaches

Page 9 - ORDER

which were "secondary to the neck pain" and were of a "pressure and throbbing/pounding quality." (Tr. 208-209). Based on this subjective report, Dr. Davidoff diagnosed plaintiff with headaches caused by muscle tension, secondary to his neck pain. (Tr. 211). Consistent with these records, plaintiff testified at the hearing before the ALJ that he was mainly limited due to the problems with his left leg, immobility in his neck, and pain. (Tr. 272). While testifying about his pain, plaintiff stated that sitting caused pain to shoot up his back and neck, and that this felt like pressure building in his head. (Tr. 291). He further testified "[i]t's not a headache, you can't say a headache, but it's the pain going up, right up through [his neck and shoulders to the top of his head]." (Id.). The record does not otherwise contain evidence that plaintiff suffers from, or has sought or received treatment for, headaches. However, plaintiff is noted as having a history of headaches on a June 18, 2003, Continuing Disability Review, (Tr. 245-246), the Physical Residual Functional Capacity Assessment ("PRFCA") completed March 15, 2005 by Dr. Richard Alley, M.D., (Tr. 212-220).

### Discussion

The medical record as a whole does not clearly reflect that plaintiff suffers from headaches as distinct from his general allegations of pain secondary to his neck injury. Rather, the record contains limited references to a history of headaches in the paperwork related to plaintiff's disability application. However, there are no medical records reflecting complaints of or treatment for headaches; the only available medical record records complaints of headaches secondary to muscle tension due to plaintiff's neck injury, which is consistent with plaintiff's testimony at the hearing. The ALJ's opinion clearly relies on this medical record and plaintiff's testimony, by finding his neck injury to be severe and incorporating the postural restrictions

recommended by plaintiff's physician as an appropriate way to minimize exacerbation of his neck injury, thereby implicitly minimizing his pain symptoms as well.

While plaintiff argues that the postural limitations are insufficient to accommodate his pain, "[a]n ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (*quoting* Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ must give clear and convincing reasons for rejecting the claimant's testimony about the severity of symptoms which could reasonably be expected to result from a medically determinable impairment . Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). This court specifically found that the ALJ had properly discredited plaintiff's credibility based on inconsistencies in his testimony and in his prior statements to his physicians, his daily activities, his sporadic work history, and his prior felony conviction, and the fact that plaintiff had received only routine, minimal and conservative treatment, suggesting his condition was less severe than alleged. (Order at 14 n. 1).

Thus, again, the ALJ committed no "basic and fundamental error" in reaching her determination. This court remanded the case in part due to the ALJ's failure to include plaintiff's headaches in her assessment of plaintiff's RFC. However, while the RFC is actually silent on the issue of headaches, it incorporates the functional restrictions recommended by Dr. Davidoff, which are themselves based on her overall diagnosis, thus the RFC cannot be said to reject a sub-diagnosis when it embraces the findings based on that diagnosis. The Commissioner's decision to defend the ALJ's opinion on the basis that it accounts for all of plaintiff's medically diagnosable impairment is therefore well founded. This court declines to find that the ALJ's committed a fundamental error by failing to identify headaches as an impairment when the

Page 11 - ORDER

medical record is at best ambiguous and she properly discredited plaintiff's credibility, and

thereby his subjective complaints of pain. Although this court ultimately determined that remand

was required to make explicit the ALJ's determination with regard to plaintiff's headaches, this

decision was reached only on careful consideration of the arguments and the record, not as a

matter of course for fundamental error.

### Conclusion

It could reasonably be argued that plaintiff had failed to bear his burden of showing

disability due to headaches. Therefore, the Commissioner was substantially justified in the

decision to defend against plaintiff's appeal the ALJ's failure to (1) characterize his headaches as

severe, and (2) include limitations attributable to plaintiff's headaches in her assessment of

plaintiff's RFC and the hypothetical posed to the vocational expert.

## CONCLUSION

In light of the specific and legitimate reasons supporting the ALJ's decision, the

government's position had a reasonable basis in both law and fact, such that a reasonable person

could think the government's defense of the ALJ's decision was correct. *See* Pierce, 487 U.S. at

566 n. 2, 108 S.Ct. 255 n. 2. Therefore, the court concludes that the government's position was

substantially justified. Accordingly, plaintiff's motion for attorney's fees is hereby DENIED.

IT IS SO ORDERED.

DATED this _____ day of February, 2011.

_____

MARK D. CLARKE
United States Magistrate Judge

Page 12 - ORDER